18-1243 NTCH, Inc. v. Federal Communications Commission, Fed. Mr. Evans for the petitioner, Ms. Zichring for the respondent. Good morning, and may it please the Court, Judges Griffith and Thale. It's nice to see you again. We've got to start meeting like this. I've asked the Court to reserve one minute of time for rebuttal. I understand that the FCC has attacked our case here on the basis of standing, but I want to just quickly address the merits of the case before turning this evening. The situation is that we claim that the FCC did not have a substantial basis for awarding Dish Network that was essentially a sole-source contract, or being the only eligible party to receive an extremely valuable license. The reasons that the FCC gave for doing that were basically threefold. One, it said it would be speedy. They emphasized that it was going to be speedier to get the roll out of this spectrum if they skipped all the rigmarole of having to go through an auction process and having other people apply for the licenses and so forth. So they gave it to one view without having to go through all that. Now, the record at the time should have shown that Dish had absolutely no experience, no expertise, and no particular qualifications for building out a terrestrial cellular network. So there was really no reason to think that they could undertake such a huge national project in the course of seven years, especially when you think that AT&T and Verizon, who have been at this for like 35 years, have not been able to accomplish what they would have to accomplish in seven years. And, of course, we had seen in the interim time that Dish has not done anything to actually roll out this network. And Mr. Olson, could you – would you focus your argument on the standard review we apply in a case like this? I know you think the Commission's technical judgment about two licensees in the 2 gigahertz band was not right, but the Commission made detailed findings about that. And we had an extremely deferential standard review about that. We don't second-guess the Commission's technical judgments. The Commission pointed out in its – in its brief that it says – this is a quote from our case. When the Commission makes a technical judgment that is supported with even a modicum of reasoned analysis, we won't reverse absent highly persuasive evidence of the conflict. They cite that in their brief. You didn't say a word about it in your reply brief. So I think for you to get anywhere here, you have to point to highly persuasive evidence that the Commission's technical judgment is wrong. What do you say? Well, I think what I have to say is we are not questioning the Commission's technical judgment. They made the judgment that you couldn't have two different licensees using the same spectrum without technical problems. And I agree that you basically have to defer to that judgment. Our position is that the Commission had other alternatives that were presented to it by us and other commenters in the NPRM, such as T-Mobile, Metro-Mobile, PCS, AT&T, who all suggested that there was a way around that technical difficulty, which could be accomplished by partitioning. The Commission rejected those views on technical grounds. It actually didn't address those issues. That's the bizarre thing. If those alternatives were presented to the Commission, one of which was giving 20 megahertz to new people to apply for and have an option and keeping 20 megahertz for a dish to keep for itself, and that would have taken care of the technical difficulty, the Commission never addressed that alternative. It just didn't say anything about it, although it mentioned that these people had suggested that as an alternative. By the way, I apologize for not recalling Mr. Evans. I'm sorry. Yes, Your Honor. So that, I think, is the answer to your question. We are not asking you to second-guess the Commission's technical judgment at all. We're asking you to second-guess the fact that they didn't consider alternatives which were presented to them. And it's a basic rule of administrative law that when an agency has various alternatives, it has to justify why it adopted one path rather than the other, and it didn't do that here. But you get back to the reasons why it decided to give this valuable license to dish. Let me just ask you one thing. One of your arguments that you say the Commission didn't address is that what the Commission should have done, instead of what it did, was simply roll back that MSS services, right, in the 2 gigahertz band? Yes. Right? Just fall back and leave it the way it was. Right. And the Commission responds in its brief that this was – that argument here is beyond the scope of these proceedings, that it's procedurally barred. I'm not sure that that particular argument is procedurally barred. I'm just – that's the argument the Commission makes. Okay. So why is it? Okay. Well, I mean, we've been – That's where they made that decision. The 2011 rulemaking, well – I'm sorry, Your Honor. I mean, we present – in our comments, we – I mean, one of the things that was up for consideration in the 2012 rulemaking was should this license be given to dish alone. That was a specific thing that the Commission requested comment on, and we specifically commented on that. And we said one alternative is for the Commission to do nothing, to not change anything and just leave the licenses in dish's hands. That didn't really seem to be the best alternative, and we suggested other alternatives to the Commission in a timely way in the NPRM. So the Commission – I mean, the other reason that the Commission gave for preferring dish or giving the license to dish was interference, just as you discussed, Judge Taylor. And as I've said, there was – we're not saying that there wouldn't potentially have been interference. I don't necessarily agree with them, but they made their judgment. We're not challenging that. But what they could have done is gotten around that interference issue and actually accomplished the congressional objectives better by making the licenses available to diverse owners, you know, and improving competition and so forth. But they didn't even – they didn't do that. So the interference justification for giving the license to dish really doesn't hold water. And the third thing, and the most baffling thing, is they made a big deal about how they wanted to preserve the ability of the satellite licensee to deliver service to rural areas and provide disaster relief and the like, as they constantly put it. Well, what's bizarre about that is these MSS licensees never provided any service to rural areas. They've never provided disaster relief or anything like that. They had zero subscribers. They were doing nothing. And yet the commission is bending over backwards to preserve a service which actually did not exist. So none of those justifications hold water. Now, as to why we are aggrieved by this, when the commission tries to argue here that they had a very narrow focus in the NPRM, they said we are only considering dish being made the licensee here unless there are – unless you can overcome the technical difficulties. I think that that's wrong. I think what the – the commission can't foreclose people from presenting alternative answers to the questions it has raised. In other words, it said tell us whether you think that we should give dish this license. So that implies that you can say no, we don't think you should give them this license, and this is why. One answer would be that dish isn't qualified to do it. And one party actually said there's no way dish has the credentials to be able to accomplish what you're wanting them to accomplish. And the second thing you could say is no, you shouldn't give it to them because there are much better alternatives available. We presented an alternative. AT&T and the others presented separate alternatives. And as I said, I think the commission was obligated to consider those alternatives, which it did not do. Could you take this argument about failure to consider alternatives, which, of course, is a classic administrative law argument. Can you tell me where in your brief it's made? I don't think it's in the brief, Your Honor. That explains my inability to find it. Right. And my inability to remember it. It makes me feel a lot better. Well, it's in the brief. I don't understand. You're making an argument that you did not make in your brief. No. In our brief, we said that the commission was obligated to consider alternatives. We didn't cite specifically to the fundamental law. Where did you make the argument they're required to consider alternatives? In the brief. Where? Let me ask my associate to find it out. Is this the argument that they should have only authorized terrestrial use of the MSS band? Is that the argument? Yes, and made it available to other people to apply for. That is the only alternative I see even raised in the brief. That was our alternative. We did mention that other people had suggested other alternatives. No. I'm looking at the arguments that you made in the brief. That's the only one that comes close that I can find to this kind of analysis, to which the FCC said it was forfeited because it was beyond the scope of the notice. Is that right? Yes. Well, if it was beyond the scope of the notice, that tells you that we made the argument. What I'm saying is it was not beyond the scope of the notice. You're saying that you're having difficulty that you're making what argument you're making before us. I'm making the argument that the scope of the notice, the commission tried to keep it very narrow, but by implication, if you're asking people should we give it only to DISH or should we consider other alternatives, then you can say no, you shouldn't give it to DISH because they're unqualified or no, you shouldn't give it to DISH because there are other alternatives. But as I understand it, the scope of the notice did not include the possibility of eliminating satellite altogether, and that's the alternative that you're offering. That's right. So why isn't that met? Why isn't your argument met by them saying no, that's not something we're considering right now? You're asking for something beyond the scope of what we're looking at. Why isn't that a perfectly legitimate response by the commission? It's not a legitimate response because the commission or any administrative agency can't just close its ears and shut its eyes and say we're not going to listen to anybody suggesting an alternative to what we are proposing. I mean, that's a reason why they should. Well, I don't know about that. I mean, so your argument would suggest that someone can come in and make an argument that's totally extreme as to what the commission is looking for. They could, and the principle of administrative law is the agency has to consider any, I forget, you know, any serious alternatives. It doesn't have to consider anything that's frivolous or anything like that. But certainly this was the case. So the commission says we're not considering, notice proposed rulemaking does not include eliminating satellite. You come in and say let's eliminate satellite. I think their response is let's talk about that some other time, but that's not what the issue is before us. But what we were saying was they shouldn't award the license only to DISH for that reason. I mean, clearly the award to DISH was going to preclude anything else. So we said no, you shouldn't give it to DISH. You should do something else. Can I ask about your Roman numeral two in your argument that the modification was so substantial that it required initial license treatment? The FCC said this wasn't raised until the petition for reconsideration. Is that accurate? Well, it's accurate that we didn't raise it. DISH network itself had raised the issue of to what extent can its licenses be modified under section 316. They obviously didn't argue that it required an initial license. No. Because that would be against their interest. So I'm asking is the first time you argued that in your petition for reconsideration, that's the reason that the FCC held in their opinion below that it was forfeit, the argument is forfeit because you waited until the petition for reconsideration. Well, that is the reason. But the commission ignored it. There is an exception to the rule that you have to raise something, that you can raise something in a petition for reconsideration that you didn't raise before. We argued that because of the DISH discussion of what is an acceptable modification of the license, that that particular point was an issue. But also one of the exceptions to the petition for reconsideration rule is that if the matter is of public interest, then the FCC can go ahead and consider it. And our argument is that before you give a $6 billion asset to somebody without considering whether that violates section 316 of the act, there is a public interest in considering it. Well, the question is why didn't you raise it before if it was so fundamental? Why didn't you raise it timely? Well, we actually focused in our comments on the fact that this was an initial license, and a lot of the same considerations go into that analysis. How different is it from what the original license was? Because we were urging the commission basically to hold an auction rather than just give it away. When DISH raised the matter of, well, wait a minute, our license can only be modified to a certain extent. We can't go too far. Frankly, that's when I realized there actually was a 316 issue. And so we raised it at the first available opportunity. Okay. Are there further questions? No. Thank you. Thank you. Good morning, and may it please the Court. I'm Sarah Citrin for the FCC. As Judge Tatel recognized, this case involves a spectrum management decision of the kind that is in the heartland of the agency's expertise and discretion. The commission considered how to increase terrestrial use of the mobile satellite S-band given two constraints. First, that this spectrum was already licensed to DISH, and second, that granting new licenses to independent operators would expose DISH to harmful radio interference. Given those constraints, the commission reasonably concluded that modifying DISH's licenses to include expanded terrestrial rights was the best and fastest way to optimize use of this spectrum. I'd like to address, I think — Why isn't this a major departure instead of just a mere modification? I mean, you're going from ancillary terrestrial component regime to one where it's pretty much exclusively. That seems like a pretty significant change, doesn't it? It could be reasonable to view it that way, Your Honor. I wanted to say first, as I think the Court recognizes, the merits of that issue is not properly before the Court. And that's because, as counsel conceded, no one raised the argument before the commission at the time of the Maine order that expanding the rights in the way the commission proposed exceeded, you know, was too fundamental a change to fall within the commission's very broad modification authority. And what this Court has said is that so long as there is a public interest in the modification, the commission may make a change by — may exercise its modification authority. And here, the commission reasonably viewed the change as not of a fundamental kind because the services that DISH could provide under its old licenses and its modified licenses were essentially the same services. It's true that the ability to provide terrestrial service was no longer tied to the provision of satellite service, but under either set of licenses, the commission could provide very similar terrestrial service. But, again, our position is that the Court shouldn't reach the merits of that argument since it was never raised at the time of the Maine order. Judge Tatel, I feel — or Judge Garland, in candor, I want to say that we didn't make that argument as to the initial license. We believe that the challenge to our 316 authority was not properly presented in time. But the initial license question really doesn't come into play for a different reason, which is that under 309J, you don't — there's never an option obligation unless there's first an acceptance of mutually exclusive applications. It's the difference between the two arguments. That is, if it's so fundamental that it can't be done by license modification, then it has to go to something else, and then it goes to the section about competitive bidding. I think as to why we distinguish between them legally, one is invoking or claiming a statutory obligation to conduct an auction under the specific statute. But I agree that as to the kinds of arguments they're raising to — they're now raising to say that something was a fundamental license, a fundamental change that exceeded the modification authority, it is not so different. But nonetheless, arguing that there was an initial license couldn't have alerted the commission to the notion that this was a challenge to our modification authority. And in fact, that was a question that the commission teed up in the notice of proposed rulemaking. Did this exceed the — were these proposed changes within the commission's modification authority under 316? And there was no challenge to that at the time of the order. As to the merits challenged the reasonableness of the commission's decision, it had alternatives. Kennedy. Just so I understand that. So the commission's position is that the fundamental change argument came too late, but the exceeding the authority under 316 did not come too late? No. The fundamental change argument is the argument that we exceeded our 316 authority, and that came too late. They've made a separate argument that under Section 309 of the Act we were required to conduct an auction, and their reason why is that this was an initial license, and if there's an initial license, there should be an auction. But that statute only — there's no — if there are no mutually exclusive applications on file, and there's no dispute here that there were not, then that statutory consideration just doesn't come into play. I think the Court has recognized quite rightly also that the Petitioner's argument has shifted over the course of this proceeding as to what alternative the commission should have pursued. And I don't think this argument raised today that the commission — the decision here was unreasonable because the commission didn't split the spectrum into 20 megahertz, 20 megahertz. That's not what they've been arguing in their opening brief. I would consider that position waived. As to the argument that the commission should have removed the satellite allocation, the commission correctly recognized in the 2012 order that that was an untimely petition for reconsideration of the 2011 co-allocation order, where the commission had made terrestrial services co-primary. And what co-primary means is it doesn't — the mobile satellite service maintains its protection. Those services have no priority over the satellite service. And in addition, not only would that be — have been an untimely challenge to that order, but in the opening briefs here, Petitioner didn't challenge the commission's determination on that point. So we would view it as doubly waived. On the question of somehow changing the service rules, which was how NTCH recast that argument in the petition for reconsideration, that wasn't within the scope of the notice because the commission — it's very clear reading the notice of proposed rulemaking, we've identified many paragraphs, but I would point the court in particular to paragraph 80. The commission was interested in alternatives. How should it proceed if there was a finding that, unlike in 2003, it was newly technically feasible for independent operators to share the spectrum, but there was never any question that the existing licensees' rights were going to be — and really that's what the commission — there may have been many alternatives available to the commission, but it's within the commission's discretion to choose among those options. They all have benefits. They all have disadvantages. What the commission did here was make a predictive judgment that, in light of this technical finding of interference and the infeasibility of spectrum sharing, the best and fastest way forward was to honor the rights of the existing licensee, and in awarding these rights, the commission obtained for the public the existing licensee's agreement to meet aggressive build-out deadlines and corresponding penalties if those deadlines aren't met, and those penalties would then remove the technical hurdle. If distrust doesn't build out, then it loses — if it doesn't build out its terrestrial network, then it loses the interference protection for satellite service that the commission understood as an obstacle to competitive bidding for these terrestrial rights. Roberts. Could you — you haven't said a word about standing. I mean, you argue it in your brief. Do you want to say anything, or have you almost concluded that you have said it? No. The standing are — we do think, notwithstanding that the merits are strong, that the Petitioner doesn't have standing. This isn't a case where — What about — let me just focus on the specific question. Why isn't this just a classic case of competitor standing? Because there was no option. That's because there was no option underway here. Under their theory, if they're right, there might be an option. There might be an option. I think what they have to show is a substantial likelihood of an option, and there's no reason to presume here unless — and this is why we haven't challenged standing as to their — what I understood until today to be their challenge to the technical finding of the impossibility of sharing. But we recognize that under the terms of the notice, if the Court disagreed on that point, then it's substantially likely the Commission would conduct an option. But otherwise, they're not saying that you would have to direct the agency in a remand here to conduct an option, and the agency might well pursue additional alternatives, seek to bolster the satellite service or — But isn't this a classic procedural standing issue? In the classic cases, the agency fails to do notice and comment, and the agency argues that the petitioner has no standing because even if they did notice and comment, they would come out the same way. And the rule is plainly that anything that upsets the procedures that were originally done and that could lead to an alternative that might benefit is sufficient. The standing — particularly the issue about redressability, I think in Justice Scalia's word, is relaxed for procedural standing issues. That's right, Your Honor. I don't understand — the arguments that we've — as to which we've challenged their standing, I understand them to be substantive challenges to the reasonableness of the Commission's decision-making, not we missed a — we didn't properly give notice and comment, or we were conducting an option and we didn't apply the proper procedure. In that case, I understand that the standard of redressability would be relaxed. But here they are saying that it didn't make sense, that the position we took didn't make sense. We didn't reasonably find that this could be the fastest way forward, that that prediction was unreasonable, that we didn't reasonably justify increasing the value of these licenses, or that we didn't — that we somehow invited spectrum warehousing. Now, we think those are wrong on the merits, but I also view those as substantive claims for which they have to meet the ordinary showing of redressability. If there are no further questions, I ask that the petition for review be denied. Yes. Could you spend another moment on standing, responding to the standing? Yes. On standing, our argument there is that — is that the alternatives that we proposed and that the other — other commenters proposed all envisioned that the commission would take away some of the — some of the license authority that was then in DISH's hands and make it available to other people. Our assumption was that if that — if that spectrum was made available for other people to apply for, probably more than one person — I mean, we said if we were the only applicant, then we would just get it, but that's extremely unlikely. If the commission had looked at the other alternatives that we proposed, there would have been multiple applicants for that spectrum, and then the commission would have had to hold an auction. And our standing is based on that. The reason we're here is because we, from the very beginning, just wanted an opportunity to be able to bid on this newly valuable spectrum that the commission made available to DISH but to no one else. Can I just clarify one other thing? Council talked about the argument we made being late that we wanted the spectrum to be reallocated. And we had pointed out in our petition for reconsideration that that was actually a misspeak. We said that the spectrum should be reallocated. What we really meant was it could keep the co-primary allocation between satellite and mobile, but you could — in your service rules, you could just say only terrestrial use is going to be authorized. So that's why it came up in the petition for reconsideration. We were clarifying what we had actually intended in our original comments. Thank you. We'll take this under submission, and I guess we're going to hear from you guys again, or at least some of you.
judges: Garland, Tatel, Griffith